IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Cr. No. 05-189 (JDB) |
| v. ) | |
| ) | |
| MICHAEL JACKSON ) | |
| ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, Michael Jackson, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.[1] Based on all the sentencing factors in this case, including the United States Sentencing Guidelines, Mr. Jackson respectfully asks the Court to sentence him to a period of incarceration of sixty months, to be followed by two years of supervised release.

### BACKGROUND

Mr. Jackson was charged, in one count of a two-count indictment, with (1) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On September 22, 2005, Mr. Jackson pled guilty to Count One of the in accordance with a written plea agreement.

---

[1] Mr. Jackson asks the Court to consider the letter and affidavit submitted under separate cover in conjunction with this memorandum.

1

**DISCUSSION**

I.      **THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.**

Under Justice Breyer's majority opinion in <u>Booker</u>, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. <u>See</u> 18 U.S.C. § 3553(a)(4)." <u>United States v. Booker</u>, _ U.S. __, 2005 WL 50108,*27 & n.1 (U.S. Jan. 12, 2005) (Breyer, J.). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the remedial majority in <u>Booker</u> held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Pursuant to <u>Booker,</u> therefore, courts must treat the Guidelines as but one, among several, sentencing factors.

Pursuant to 18 U.S.C. §§ 3562 and 3553(a)–which were explicitly endorsed by the Supreme Court in <u>Booker</u>–sentencing courts should consider the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661, also expressly endorsed by the Booker majority:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that sentencing courts may no longer consider the Guidelines alone in determining the appropriate sentence. With respect to *departures* from the Guideline range, in particular, following Booker courts need not justify sentences outside the Guidelines by citing factors that take the case outside the "heartland." Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in Section 3553, courts may disagree with the range proposed by the Guidelines in individual cases and exercise their discretion.

**II.     UNDER ALL OF THE RELEVANT SENTENCING FACTORS, MR. JAWARD SHOULD RECEIVE A SENTENCE OF INCARCERATION UNDER 46 MONTHS**

    A.     <u>Statutory Provisions</u>

Pursuant to the applicable statute, the maximum term of imprisonment for the offense at issue is ten years.

    B.     <u>Advisory Sentencing Guidelines</u>

    (I).     *Applicable Guideline Range*

The Probation Office, consulting the 2005 edition of the <u>Guidelines Manual</u>, has concluded that the total offense level in this case is 23 and that Mr. Jackson's criminal history category is V, resulting in an advisory Guideline range of 84-105 months.

    (II).     *Mr. Jackson Should Receive a Downward Departure Based on Coercion and Duress*

Section 5K2.12 of the United States Sentencing Guidelines provides for a downward departure based on coercion and duress. It provides, in relevant part, that "[i]f the defendant committed the instant offense because of serious coercion, blackmail or duress....the court may depart downward." The provision further states that "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or a natural

emergency."

In considering a downward departure under the coercion and duress guideline,

> a district court must objectively determine whether a reasonable person in defendant's position would perceive there to be a threat, explicit or implicit, of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or a natural emergency; in making this determination, particularly where a claim involves implicit threats, questions to be considered include the actual intent of the person alleged to have made the threat, the subjective understanding of the defendant, and whether an objective third party could reasonably consider it to be a serious threat of either physical injury or another category of threat recognized by the guideline.

U.S. v. Sachdev, 279 F.3d 25, 29 (1st Cir. 2002).

In light of the analysis provided in the letter sent, under separate cover, to government counsel and the Court,[2] Mr. Jackson asks the Court to grant a downward departure for duress. Mr. Jackson clearly suffers from Post-Traumatic Stress Disorder, or PTSD–a condition stemming from his own gun-shot injuries and the murders of his family members. As outlined in detail in the letter, Mr. Jackson's mental state is directly linked to the commission of the instant offense.

With respect to determining the applicability of a U.S.S.G. § 5K2.12 departure, the Court is not confined to the classical definition of duress but "should properly consider the individual before the Court and [his] particular vulnerability." U.S. v. Smith, 987 F.2d at 891, quoting U.S. v. Johnson, 956 F.2d 894, 899 (9th Cir. 1992). In the Johnson case, the Court considered the particular vulnerability of women suffering from battered person's syndrome. In the instant case, the Court should consider the particular vulnerability of Mr. Jackson, and the fact that he suffers from PTSD, when assessing the proposed departure. In so doing, it should rely on the affidavit of

---

[2] The Second Circuit case of U.S. v. Smith, 987 F.2d 888, 891 (2nd Cir. 1993) found that a defendant who claimed duress was entitled to the appointment of a psychiatrist and held that expert testimony could be relevant at sentencing because the Guidelines permit downward departures based on incomplete defenses of duress.

Dr. Giunta–an experienced psychologist who had the opportunity to meet with Mr. Jackson and assess his mental, emotional and psychological states.

### C.   Section 2553 Factors

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

*I. Nature of the Offense*

While Mr. Jackson in no way wishes to diminish the seriousness of his offense, he notes that the crime to which he pled guilty was neither a crime of violence nor a drug offense. As indicated in the factual proffer read into the record by the government following the plea colloquy on September 22, Mr. Jackson's conduct involved possessing a firearm. On the night of

6

September 22, 2005, Mr. Jackson possessed a firearm in a vehicle. He was not charged with using the weapon, brandishing the weapon, or even removing it at any point from the car in which he was seated. As soon as the police confronted Mr. Jackson, he stated "I just got shot. I be scared as shit, I stayed scared. People shot me and killed my aunt"–indicating that the reason he possessed the gun was for his own protection.

*II. Characteristics of the Defendant*

For a man his age, Mr. Jackson has experienced a disproportionate share of loss and hardship. Since the time he was approximately 10 years old, when he and his mother and sisters were abandoned by his father, Mr. Jackson has struggled with anger management and engaged in self-destructive behaviors. A glance at the Presentence Investigation Report shows clearly that Mr. Jackson's foray into such behaviors commenced shortly after his father's departure. Mr. Jackson's problems–emotional and behavioral–became so pronounced and pervasive that, at age 16, he was placed, for a two-year period, in a psychiatric institute for residential treatment. While at the Pines Residential Treatment Center, Mr. Jackson was diagnosed with atypical depression, poly substance abuse, borderline intellect, and anti-social personality traits.

As if his father's abandonment was not enough, Mr. Jackson lost five more family members in the last ten years. Specifically, he lost his mother, three brothers and nephew all to street violence or substance abuse. Mr. Jackson was incarcerated when each of this family members died, and to this day he is coping with the resulting, and remaining, feelings of helplessness. Mr. Jackson still feels anger stemming from the lack of closure surrounding these

experiences.

At the time of the instant offense, Mr. Jackson himself had been the victim of violence–a fact which, in conjunction with the violence affecting the lives of family members, only made more real his belief in the need to protect himself.

*III. Sentencing Mr. Jackson to a Sentence of Incarceration of 84-105 Months Would be Unduly Punitive*

Imposition of a lengthy sentence of imprisonment in the instant case would serve no purpose other than punishment. As noted above, Mr. Jackson engaged in the conduct underlying this case as a result of fear, trauma and duress. At the time of his arrest, he was not engaging in violent acts or posing a threat to anyone. He was trying to protect himself following a series of real and perceived threats as well as the murders of several family members.  While this does not, in any way, serve to justify the fact that he broke the law, it does help provide a context for Mr. Jackson's actions.

The letter provided to the Court, coupled with the facts outlined in the Presentence Investigation Report, make abundantly clear that, more than anything, Mr. Jackson needs physical, emotional and psychological rehabilitation. The Court should factor this need into its determination of a fair, reasonable, and appropriate sentence.

## **CONCLUSION**

For the reasons set forth above, as well as for any others that it may deem fair and

reasonable, Mr. Jackson asks the Court to sentence him to a period of incarceration of sixty months, to be followed by 2 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553.

    A longer sentence of imprisonment in this case would serve neither a deterrent nor a rehabilitative purpose.

                                Respectfully submitted,

                                A.J. Kramer
                                Federal Public Defender

                                _____/s/_____
                                Lara G. Quint
                                Assistant Federal Public Defender
                                625 Indiana Avenue, N.W.
                                Washington, D.C.  20004
                                (202) 208-7500 ext.126